UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SAM DOE 1, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION NO. 2:13-cv-112** |
| | : | |
| **v.** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **JACKSON CITY SCHOOL DISTRICT, et al.,** | : | |
| | : | **PLAINTIFFS' MOTION FOR** |
| **Defendants.** | : | **TEMPORARY RESTRAINING ORDER** |
| | : | **AND PRELIMINARY INJUNCTION AND** |
| | : | **MEMORANDUM OF LAW IN SUPPORT** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

Now come Plaintiffs Sam Doe 1, et al., by and through counsel, and respectfully move the Court pursuant to Fed. R. Civ. P. 65 for an Order temporarily restraining and preliminarily enjoining Defendants Jackson City School District, and others in their official capacities, from maintaining and displaying the portrait of Jesus Christ now on display at Jackson High School. Plaintiffs submit that the maintenance and display of the portrait of Jesus at the high school has the effect of advancing and endorsing one religion, improperly entangling the State in religious affairs, and violating the personal consciences of Plaintiffs. This motion is supported by the memorandum of law attached hereto and, by reference, incorporated herein.

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 5

FACTUAL BACKGROUND ............................................................................................... 5

ARGUMENT ....................................................................................................................... 8

   I.   Plaintiffs Have Standing and May Challenge the Portrait Because They Have Suffered an Injury Due to Defendants' Maintenance and Display of the Portrait. ................................ 9

   II.  This Court Should Issue a Temporary Restraining Order Enjoining Defendants' Display of the Portrait. ................................................................................................................ 11

      A.   Plaintiffs Can Demonstrate a Strong Likelihood of Success on the Merits Because the Display of the Portrait Violates the First Amendment And Is Government Speech Endorsing Religion. ............................................................................................. 11

          1.   Defendants are Violating the Constitutional Rights of Plaintiffs Because Their Display and Maintenance of the Portrait Has No Legitimate Secular Purpose, Has the Primary Effect of Advancing Religion, and Fosters Excessive Government Entanglement with Religion. ........................................................................... 13

              a.   Plaintiffs are Suffering Irreparable Harm Because Defendants Have No Legitimate Secular Purpose for Maintaining and Displaying the Portrait. ........... 15

              b.   Defendants' Maintenance and Display of the Portrait Has the Primary Effect of Advancing Religion. ............................................................................. 17

              c.   Portrait Display Fosters Excessive Government Entanglement with Religion .... 19

          2.   The Display Is Not Private Speech in A Limited Public Forum But Is Government Speech Endorsing a Particular Religion .......................................................... 20

              a.   The School Board Has Not Created a Limited Public Forum. ............................ 22

              b.   In the Absence of a Public Forum, Privately Donated Displays on Government Property Constitute Government Speech .................................................................

              c.   The Newly Adopted Limited Public Forum Policy Cannot Be Applied Because it Allows Viewpoint Discrimination ....................................................................... 25

      B.   Without a TRO/PI, Plaintiffs Will Continue to Suffer Irreparable Injury and Harm Because Encountering the Portrait on a Regular Basis Is an Affront to Their personal Religious Beliefs ......................................................................................................... 26

      C.   A Temporary Restraining Order Will Not Harm Third Parties Because Individuals' First Amendment Rights Will Not Be Infringed Upon With Removal of The Portrait 27

      D.   Issuance of a Temporary Restraining Order Serves the Public Interest by Preventing Violations of Plaintiffs' Constitutional Rights ........................................................... 28

CONCLUSION ................................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992), 9

*ACLU v. Mercer County*, 432 F.3d 624 (6th Cir. 2005), 9

*ACLU of Ky. v. Grayson County*, 591 F.3d 837 (6th Cir. 2010), 9

*ACLU of Ky. v. McCreary County*, 545 U.S. 844 (2005.), 9, 13, 16

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). 11

*Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679 (6th Cir. 1994), 11, 13, 14, 17, 23, 24

*Stone v. Graham*, 449 U.S. 39 (1980), 11

*Baker v. Adams County/Ohio Valley School Bd.*, 310 F.3d 927 (6th Cir. 2002), 11

*Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971), 13, 14, 15, 19

*Walz v. Tax Commission of City of New York*, 397 U.S. 664, 674 (1970), 13

*Edwards v. Aguillard*, 482 U.S. 578, 585 (1987), 15

*Stone v. Graham*, 449 U.S. 39 (1980), 15, 16, 24

*Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 308 (2000), 16, 26

*Adland v. Russ*, 307 F.3d 471, 480 (6th Cir. 2002), 16, 17, 18, 19

*County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573 (1989) 18, 19

*Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 968 (9th Cir. 2011), 19

*Agostini v. Felton*, 521 U.S. 203, (1997), 19

*Coles ex rel. Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369, (6th Cir. 1999), 20

*McCollum v. Bd. of Ed. of School Dist.*, 333 U.S. 203 (1948), 20

*FFRF V. City of Warren*, 707 F.3d 686, 697-98 (6th Cir. 2013.), 20, 21

*Green v. Haskell County,* 568 F.3d 784 (10th Cir. 2009.), 21

*Capitol Square Review and Advisory Bd., v. Pinette*, 515 U.S. 753, (1995), 21, 22

*Kincaid v. Gibson*, 236 F.3d 342, 349 (6th Cir. 2001), 22, 23

*Cornelius v. NAACP Legal Defense and Education Fund, Inc.,* 473 U.S. 788,(1985), 22, 23

*Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260 (1999), 23, 26

*Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009), 24

*Doe v. Harlan County School Dist.*, 96 F.Supp.2d 667, 24

*Joyner v. Forsyth County*, 653 F.3d 341, 350 (4th Cir. 2011), 24

*Board of Educ. of Westside Community Schools v. Mergens*, 496 U.S. 226, (1990), 24, 25

*Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 395 (1993), 25

*Good News Bible Club v. Milford Cent. Sch.*, 533 U.S. 98, 113 (2001), 25

*City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 763-64 (1988), 25

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1078-79 (6th Cir. 1994), 27, 28

*Elrod v. Burns,* 427 U.S. 347,(1976), 27

*Newsom v. Norris*, 888 F.2d 371, (6th Cir. 1989), 27

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, (6th Cir.2004), 27

*Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, (1979), 28

*Planned Parenthood Association v. City of Cincinnati,* 822 F.2d 1390, (6th Cir.1987*)*, 28

BJS No. 2, Inc. v. City of Troy, Ohio, 87 F. Supp. 2d 800, 804 (S.D. Ohio 1999), 28

## MEMORANDUM

## INTRODUCTION

This lawsuit challenges the constitutionality of the maintenance and display of a religious portrait of Jesus in Jackson High School by the Jackson City School District. The portrait of Jesus has the purpose and effect of advancing one religion and improperly entangling the State in religious affairs.   In maintaining and displaying the portrait, Defendants Jackson City School District, Jackson City Board of Education, and Phil Howard, in his official capacity as Superintendent of Jackson City School District, have violated the Establishment Clause of the First Amendment, which applies to the states by the Fourteenth Amendment. Defendants also violate Article I, §7 of the Constitution of the State of Ohio. Plaintiffs have filed an Amended Complaint and simultaneously moving to restrain and enjoin the maintenance and display of the portrait of Jesus, which violates their constitutional right to freedom of religion.

## FACTUAL BACKGROUND

Until a recent complaint was filed, a large portrait of Jesus Christ (hereafter referred to as "the portrait") had been prominently displayed for over 65 years in an entrance hall of Jackson Middle School.[1] (Plaintiff's Exhibit B). On or about March 13, 2013, the portrait was relocated to a hallway in Jackson High School and visitors and students at the high school first observed it the following day.[2] (Plaintiffs' Exhibit A). The portrait now hangs in the fine arts hallway of the

---

[1] Plaintiffs' Exhibit B, p.2.
[2] Plaintiffs' Exhibit A, Video 5, p.16, (lines 4-9) , "…I informed the Board of Education last night in our monthly board meeting that we would be moving the portrait and today we were able to move the portrait…from the middle school up to the high school." *See also*, Video 8, p.25, (lines 16-19).

high school near a trophy case.[3] The new location exposes a potentially larger and new audience to the portrait.[4]

The portrait is located in an area of the high school where many students and faculty are likely to pass on a daily basis. The high school frequently hosts public events. (Sam Doe 1 Aff. ¶ 7). Jackson City School District Board of Education meetings take place at Jackson High School monthly and are open to the public. (Sam Doe 1 Aff. ¶ 7). The school also hosts a variety of other events open to the public. These include a yearly "Community Thanksgiving" celebration[5], Jackson Band Boosters fund raising functions[6], and other public functions.[7]

The portrait was originally donated to the school district by the Hi-Y club in, what was then, Jackson High School.[8] It remained a fixture in an entrance hallway of Jackson Middle School where it was prominently displayed.[9] The portrait remained in the middle school even after the high school and student organization that donated the portrait relocated to another building.[10] Superintendent, Phil Howard, defended the district's maintenance and display of the portrait asserting it was donated to the school and became "a historical part of the school building."[11]

---

[3] *Id.* at Video 7, p. 22, (lines 9-11).
[4] *Id.* at Video 3, p. 10, (lines 21-22). *See also*, Video 8, p.25 (lines 16-19).
[5] Aprille Johnston, *Community Thanksgiving dinner in Jackson Wednesday evening*, The Telegram News, March 27, 2013, http://thetelegramnews.com/main.asp?SectionID=6&SubSectionID=83&ArticleID=8373&TM=29179.06
[6] Jackson High School webpage: Jackson Band Boosters Spring Fling Advertisement,
http://jcs.k12.oh.us/joomla/images/teacher_files/DobbinsMary13/spring_fling.jpg
[7] *Id*. at "Shred-It Day," http://jcs.k12.oh.us/joomla/images/teacher_files/ShasteenKennedy13/shred-it_day_flyer1.pdf
[8] Plaintiffs Exhibit A, Video 1, p.3, (lines 18-19), Superintendent Howard, "…the photo was donated by a student group known as the Hi-Y club." *See also,* Video 2, p.8, (lines 4-6), Howard, "This particular portrait was given to the school by the Hi-Y club." Video 5, p.17, (lines 23-25), p.18 (line 1), Mr. Eisnaugle, Hi-Y Club's faculty advisor: "The H-Y club is a Christian based organization…that's why the picture of Jesus was given as a gift to represent our club."
[9] *Id.* at Video 1, p.3 (line25), p.4 (lines1-6), Howard, "This photo hangs in what's known as our Hall of Honor…Granted, it is the biggest picture, and it's in a prominent area, but it is certainly not the only picture that's here…in our Hall of Honor."
[10] *Id*., Video 5, p.17 (lines 8-15).
[11] *Id.*, Video 1, p.3, (lines 18-23).

On January 2, 2013 the Freedom from Religion Foundation ("FFRF") sent a letter to the Jackson City School District and Superintendent Howard, warning them of the fact that the display of the portrait of Jesus was a violation of the Establishment Clause and needed to be removed.[12] Superintendent Howard refused to remove the portrait stating that it would take a court order to remove the picture.[13] The Superintendent's refusal to remove the portrait was endorsed by the school board in statements made at the school board meeting.[14] It is clear from the initial response to the request to remove the portrait by the Superintendent and the School Board that the portrait was considered to be the property of the Jackson City School District. On February 7, 2013, the ACLU of Ohio and FFRF filed a complaint against Defendants requesting this Court order removal of the portrait as a violation of Plaintiffs federal and state Constitutional rights.

Jackson City School District retained outside counsel to investigate and report on the lawfulness of the display. (Plaintiffs' Exhibit B, Report and Recommendation, p.1). On February 12, 2013, the school board held a meeting where it reviewed the report presented to the district which provided a history of the portrait and stated that the district "appears to have created by longstanding practice, a limited public forum for student groups to hang portraits of inspirational figures."[15] On February 12, 2013, the Jackson City School Board enacted a new policy purporting to establish a "limited public forum" in the middle and high school.[16] This decision came after "huddling with their attorneys in closed session for more than an hour."[17] Defendants, reciting language from the report, alleged that because the school created a new

---

[12] *Id.*, Video 1, p.2, (line 25), p.3 (lines 1-5).
[13] *Id.*, Video 1. p.5, (lines 1-4).
[14] *Id.*, Video 1, p.6, (lines 19-25).
[15] Plaintiffs' Exhibit B, p.6.
[16] Dan Sewell, "Ohio School Board votes to keep Jesus Portrait Up," Associated Press, Feb. 12, 2013.
[17] *Id.*

limited public forum it could not infringe on Hi-Y's right to free speech by taking the portrait down.[18]

Defendants now contend that the portrait belongs to the Hi-Y club and is not the school's speech.[19]  At the March 12, 2013 school board meeting Superintendent Howard acknowledged that, "it's clear that government endorsement of religion is not allowed. School [sic] can't just own a picture of Jesus and decide to put it up…We can't make that kind of endorsement as a government entity."[20] The following day the portrait was relocated to the high school based on the fiction that the Defendants had created a "limited public forum."[21]

The Hi-Y club, which had originally donated the portrait to the high school building some 65 earlier had actually abandoned the portrait entirely in 2004 when the high school and club moved to a new building.[22] The Hi-Y club has not been located on the same site as the portrait for nine years. Further, the Hi-Y club never asserted ownership or control over the portrait until after the Plaintiffs' initial complaint was filed.[23]  Therefore, it is reasonable to assume that most students and others passing through the school believed that the portrait as the school's property and represented the school's views on religion.

## ARGUMENT

Defendants' actions have no predominantly secular purpose and have led Plaintiffs to believe that the religious beliefs associated with the portrait are endorsed or approved by Defendants. Defendants' maintenance and display of this portrait is infringing on Plaintiffs' right

---

[18] *Id*.
[19] Plaintiffs' Exhibit A, Video 6, p. 20 (lines 20-25), Superintendent Howard, "We conducted a thorough investigation. The investigation determined that the portrait does not belong to the school. It is not government speech. It is property of the Hi-Y club, and therefore is the viewpoint of the Hi-Y."
[20] Plaintiffs' Exhibit A, Video 7, p.23, (lines 8-15).
[21] Lauren Schmoll, "Jesus Portrait Moved from Ohio Middle School," WSAZ News Channel 3, Updated Mar. 14, 2013.
[22] Plaintiffs' Exhibit B, p. 3. See also, Plaintiffs' Exhibit A, Video 8, p.24 (lines 12-14).
[23] Plaitiffs' Exhibit B, p.3.

to freedom of religion. The presence of the portrait makes them feel like outsiders who are being coerced by their government into observing religious iconography identified with one particular religion. As a direct result of these unconstitutional actions, Plaintiffs and other like-minded citizens and residents have suffered, and continue to suffer, permanent, severe and irreparable harm and injury. The only remedy is the issuance of a temporary restraining order and preliminary injunction requiring the Defendants' to remove the portrait immediately and cease and further maintenance and display of the portrait in Jackson High School.

I.      **Plaintiffs have standing and to challenge the portrait because are suffering and will continue to suffer irreparable and permanent injury and harm due to Defendants' maintenance and display of the portrait.**

Plaintiffs have constitutional standing to challenge the maintenance and display of the portrait of Jesus hanging in a public school. Each has suffered a particularized injury due to the maintenance and display of the portrait, which can be redressed by this Court. In *Lujan v. Defenders of Wildlife*, the Supreme Court held that a plaintiff must show that he or she "has suffered (1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992). The Sixth Circuit has consistently affirmed standing in First Amendment cases with religious displays. *See generally*, *ACLU v. Mercer County*, 432 F.3d 624 (6th Cir. 2005); *ACLU of Ky. v. Grayson County*, 591 F.3d 837 (6th Cir. 2010); *ACLU of Ky. v. McCreary County*, 354 F.3d 438, affd. 545 U.S. 844 (2005.)

In the present situation, Plaintiffs have a suffered concrete and particularized injury. The maintenance and display of the portrait infringes upon their First Amendment right to freedom of religion, causes them to question whether their religious beliefs will be respected by the school district and forces them to view a portrait representing religious views promoted by Defendants

that differ from the way that they choose to view religion and morality. This Court can remedy Plaintiffs' injuries by enjoining Defendants' from the continued maintenance and display of the portrait and ordering an immediate removal of the portrait from Jackson High School.

The display of the portrait at the high school is continuing to cause harm to Plaintiffs by imposing the beliefs of one particular religion on them and interfering with their private family choices regarding the practice of religion and morality. Plaintiff Sam Doe 5 attends Jackson High School and now must view the portrait of Jesus every school day while moving between classes, lunch, and school activities. (Sam Doe 5 TRO Aff. ¶ 7).

Plaintiff Sam Doe 2 attends Jackson Middle School. (Sam Doe 2 Compl. Aff. ¶ 4). Sam Doe 2 will matriculate to Jackson High School. (Sam Doe 2 Compl. Aff. ¶8). Sam Doe 2 attends functions at Jackson High School. (Sam Doe 2 Compl. Aff. ¶11).

Plaintiffs Sam Doe 1, Sam Doe 3, and Sam Doe 4 have children who attend schools within the Jackson City School District, ranging from elementary school to high school. (Sam Doe 1 Compl. Aff. ¶ 5; Sam Doe 3 Compl. Aff. ¶4;  Sam Doe 4 TRO Aff. ¶2).   Sam Doe 1 and Sam Doe 3 visit Jackson High School to attend Board of Education meetings. (Sam Doe 1 Compl. Aff. ¶7; Sam Doe 3 Compl. Aff. ¶7). Sam Doe 4 is often required to be present in the high school to address various parental duties and obligations. (Sam Doe 4 ¶5),  All Plaintiffs will continue to visit Jackson High School for school activities and community events and will suffer the harm stemming from the maintenance and display of this portrait if the requested temporary restraining order and preliminary injunction is not granted. (Sam Doe 1 Compl. Aff ¶7; Sam Doe 2 Compl. Aff. ¶12; Sam Doe 3 Compl. Aff. ¶7; Sam Doe 4 Compl. Aff. ¶5; Sam Doe 5 Compl. Aff. ¶5).

**II.    This Court Should Issue a Temporary Restraining Order and Preliminary Injunction Enjoining Defendants' Maintenance and Display of the Portrait.**

A court may issue a temporary restraining order and preliminary injunction enjoining the actions of a party after considering four factors: 1) whether the movant has a strong likelihood of success on the merits; 2) whether the movant would otherwise suffer irreparable injury; 3) whether issuance of a preliminary injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuance of a preliminary injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

**A.    Plaintiffs Can Demonstrate a Strong Likelihood of Success on the Merits Because the Display of the Portrait Violates the First Amendment And Is Government Speech Endorsing Religion.**

Courts have repeatedly found that sectarian religious displays in schools violate the Establishment Clause. *See generally*, *Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679 (6th Cir. 1994); *Stone v. Graham*, 449 U.S. 39 (1980); *Baker v. Adams County/Ohio Valley School Bd.*, 310 F.3d 927 (6th Cir. 2002) ("The Supreme Court has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools. . . in no activity of the state is it vital to keep out divisive forces than in the schools." (internal citations omitted)) None of the rationales offered by the school board can obscure what any reasonable observer would recognize: 1) that the prominent display of a portrait of Jesus in a public school hallway is government speech; 2) that the display and maintenance of the portrait endorses one particular religion; and 3) that the school board acted with a predominately religious purpose when it accepted, installed, and displayed the portrait of Jesus Christ at Jackson High School. The history and the context of the display belie any claim of secular motivation.

11

The portrait has been prominently displayed and maintained in the entrance hallway of a school building owned by the Jackson City School District for the past 65 years.[24] Defendants publicly claimed that the decision to move the portrait from the middle school to the high school stemmed from the sudden realization that the portrait was owned by the Hi-Y club.[25] However, this assertion strains credulity and ignores the fact that the portrait has remained in the exclusive possession of the school board since 1947, when it was donated to the school as a gift from the Hi-Y club.[26] For more than 65 years, Defendants maintained the portrait affixed to a wall in the Jackson Middle School. Defendant Howard acknowledged the district's ownership of the portrait when he stated that the original reasons he would not remove the portrait were because "the photo was donated by a student group . . . [and] the photo has actually been here so long, it has become a historical part of the building."[27]

The school district's ownership of the portrait was reaffirmed when the Hi-Y club moved, along with Jackson High School, to a new building, abandoning the portrait at Jackson Middle School. The portrait was only moved after Plaintiffs' filed suit in a transparent attempt to develop a rationale for Defendant's prior and on-going illegal acts. Although Defendant's contend that the portrait was moved at the request of the Hi-Y club, Defendant's ownership and control over the portrait is well documented based on the Jackson City School District employees assuming responsibility for: 1) removing the portrait from the middle school; 2) transporting the portrait to the new location; and 3) affixing the portrait to the wall.[28] These actions confirm that the school board's newly discovered secular purposes for displaying and maintaining the portrait

---

[24] Plaintiffs' Exhibit B, p.2.
[25] *Id*.
[26] Plaintiffs Exhibit A, Video 1, p.3, (lines 18-19).
[27] *Id.*, Video 1, p.3, (lines 18-23).
[28]

are not only "secondary to a religious objective" but also an outright "sham."  *ACLU of Ky v. McCreary*, 607 F.3d 439, (2010).

> **1.      Defendants are Violating the Constitutional Rights of Plaintiffs Because Their Display and Maintenance of the Portrait Has No Predominantly Secular Purpose, Has the Primary Effect of Advancing Religion, and Fosters Excessive Government Entanglement with Religion.**

Not only does Defendants' maintenance and display of the portrait lack a predominant secular purpose, but it actually lacks *any* legitimate secular purpose.  The test for whether government involvement with religion violates the Constitution was established by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602. In *Lemon,* the Court set out a three prong test. *Id*. If state action violates any one prong, then it is a violation of the Establishment Clause. *Id*.  The three prongs of *Lemon* are: 1) the state actor must have a "secular…purpose" for its actions; 2) the state action's "principal or primary effect" must neither advance nor inhibit religion; and 3) the action "must not foster 'an excessive government entanglement with religion.'" *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971) (quoting *Walz v. Tax Commission of City of New York*, 397 U.S. 664, 674 (1970)).

The facts before this Court are almost identical to the facts in, *Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679 (6th Cir. 1994). In *Washegesic*, "a portrait of Jesus Christ" had "been hanging alone in the hallway of the Bloomingdale Secondary School for the last thirty years." *Id*. at 681. The portrait was a copy of Warner Sallman's Head of Christ, which hung in the school's hallway outside of the gymnasium. *Id*. Similar to the case at hand, the portrait was "originally donated to the school," was "not part of a group of paintings nor [was] it used in conjunction with any class or education program." *Id*.  In the same hallway were "trophy cases, a painting of the school mascot and a bulletin board." *Id*.

The Sixth Circuit Court of Appeals held that the school district failed all three prongs of the *Lemon* test. The portrait lacked a secular purpose because it "is not integrated into any course of study." *Id*. at 683. The display of the portrait had the primary effect of advancing religion because it "symbolically place[s] the government's seal of approval on one religious view- the Christian view." *Id*. at 683 (internal citations omitted). Finally, the portrait was evidence of an excessive entanglement of government and religion because the school had control over a religious item. *Id*.

Defendants actions violate all three prongs of *Lemon* and the Establishment Clause in the same way that the actions of the school district in Michigan violated the law in *Washegesic*. The portrait here is also a copy of the Warner Sellman "Head of Christ," [29] is currently displayed in a hallway near trophies which do not present a unifying theme for the display,[30] and the portrait is not used in conjunction with any educational instruction at the school. A student organization, the Hi-Y club donated the portrait to the school district, and the Defendants retained control over it by maintaining and displaying it for over 65 years.[31] Further, the Hi-Y club abandoned the portrait when the club moved, along with the high school in 2004, and declined to take the portrait to the new building.

Defendant Howard has openly acknowledged the blatant constitutional violation of a public school hanging a portrait of Jesus.[32] Although he now alleges that the portrait is the speech of the Hi-Y club, Defendant Howard openly concedes that "government endorsement of

---

[29] Joe Blundo, *Portrait at Center of Debate Ubiquitous*, The Columbus Dispatch, Jan. 28, 2013
http://www.dispatch.com/content/stories/life_and_entertainment/2013/01/28/portrait-at-center-of-debate-ubiquitous.html.
[30] Plaintiffs' Exhibit A, Video 7, p. 22, (lines 9-11).
[31] *Id*, Video 7, p.23, (lines 8-15).
[32] Plaintiffs' Exhibit A, Video 7, p.23, (lines 8-15).

religion is not allowed. A school cannot own a picture of Jesus and decide to put it up."[33]

Therefore, Defendants' open and obvious violation of the Constitution is not seriously contested.

> ### a. Plaintiffs are suffering irreparable harm because Defendants have no legitimate secular purpose for maintaining and displaying the portrait.

Defendants' maintenance and display of the portrait of Jesus has no legitimate secular purpose. A government action involving religion is only permissible if it has a secular purpose. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). "The purpose prong of the *Lemon* test asks whether government's actual purpose is to endorse or disapprove of religion." *Edwards v. Aguillard*, 482 U.S. 578, 585 (1987).

In *Stone v. Graham,* the Supreme Court struck down a Kentucky law requiring the display of the Ten Commandments in every public school classroom because it lacked a secular purpose. The Court determined this to be a clear constitutional violation because the Ten Commandments were not integrated into the curriculum, and because the "[p]osting of religious texts on the wall serves no such educational function." *Stone v. Graham*, 449 U.S. 39 (1980). Here, as in *Stone* Defendants have never attempted to integrate the portrait into the curriculum. Under these circumstances, it is a blatant endorsement of religion and serves no educational purpose.

It is crucial to note that "the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective." *McCreary County, Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 864 (2005). When a governmental entity professes a secular purpose for an arguably religious policy, the government's characterization is, of course, entitled to some deference. However, "it is nonetheless the duty of the courts to distinguis[h] a sham

---

[33] Plaintiffs' Exhibit A, Video 7, p.23, (lines 8-15).

secular purpose from a sincere one." *Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 308

(2000) (citation and internal quotation marks omitted); *see also, e.g.*, *McCreary*, 545 U.S. at 864-

66.

Context is also essential. The Sixth Circuit in *Adland v. Russ*, 307 F.3d 471, 480 (6th Cir.

2002) held that "context is critically important in evaluating a state's proffered secular purpose,"

and that an update in the description of context after litigation began might indicate a sham

secular purpose. In *Adland*, the State of Kentucky wanted to display a Ten Commandments

monument as a permanent marker on its state capitol grounds. *Id*. Kentucky "did not reveal the

contents of this display until it was in the midst of litigation." *Id*. at 481. To the Court, this

"indicate[d] that the other components of the display are an afterthought, at best, secondary in

importance to the Ten Commandments, and suggests that the Commonwealth acted with a

predominately religious purpose." *Id*. Kentucky had clarified the context of the display by

indicating that its Ten Commandments monument would be displayed with other, more secular

signs and markers. However, the court found that this would only "dilute" the religious message

and it would still appear to a reasonable observer that government and religion were linked in an

"impermissible fashion." *Id*. at 486-487.

Defendants' presented the new limited public forum policy and alleged fear of violating

the rights of the Hi-Y club as secular purposes for the display after litigation commenced. There

is no evidence of any attempts by the Defendants, prior to litigation, to create a limited public

forum. Further, there is no evidence that, prior to this litigation, that the Hi-Y club had asserted

ownership over the portrait for over 65 years.  Therefore, this newly contrived policy cannot, in

light of Supreme Court precedent, override the Defendants' singular and obvious manifest

purpose of promoting the Christian religion.

Moreover, statements from Superintendent Howard evince the contrived nature of the policy. The school board adopted a policy whereby it established two limited public forums in both the middle and high schools.[34] In those forums, student organizations could "hang portraits of inspirational figures central to the club's meaning and purpose."[35] Yet, when asked if other religious figures, like the Prophet Mohammed would be a permissible "inspirational figure," Superintendent Howard instead offered that the French Club could hang a picture of the Eiffel Tower. This deflection of the question and apparent misstatement of the policy by the Superintendent of the district further illustrates that the new policy is nothing more than a mere pretext for an impermissible religious purpose. Further, similar to the facts in *Adland*, such an addition now would merely serve to dilute the religious purpose of the portrait and not eliminate its unconstitutional nature. *Adland* at 486-487.

> **b.**     <u>**Defendants' maintenance and display of the portrait has the primary effect of advancing religion.**</u>

A portrait of Jesus hanging by itself in a school hallway cannot be argued to be religiously neutral.  As the district court in *Washagesic* noted:

> Like the Ten Commandments, the portrait of Jesus serves a primarily religious purpose.  Jesus Christ is, if anything, more fundamental to the doctrine of Christianity than the Ten Commandments are to either Judaism or Christianity. Defendants' declaration that the picture is displayed as an artistic work or that it is a depiction of a historical figure does not blind this Court to the religious message necessarily conveyed by the portrayal of one who is the object of veneration and worship by the Christian faith . . . it stands alone on the school wall where its effect, if any, is to make children look at, meditate upon, and perhaps revere Jesus Christ.

813 F. Supp. 559, 563 (W.D. Mich. 1993).

---

[34]

[35]

The Unites States Supreme Court decision in the case *County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573 (1989), is also illustrative. In *Allegheny,* the Supreme Court held that a privately donated crèche displayed in a county building constituted an endorsement of religion by the county. *Id*. As the Court observed:

> No viewer could reasonably think that it occupies this location without the support and approval of the government. Thus, by permitting the display of the crèche in this particular physical setting, the county sends an unmistakable message that it supports and promotes the Christian praise to God that is the crèche's religious message.

*Id*. at 599-600. Further, the Court noted that a label on the crèche bearing the name of the Roman Catholic organization that donated it did not alter the fact that it was the government that was endorsing religion. *Id*. at 600. Instead, the label "simply demonstrates that the government is endorsing the religious message of that organization, rather than communicating a message of its own." *Id*.

Similar to *Allegheny*, the Hi-Y club privately donated the portrait to the Jackson City School District and no reasonable observer would logically conclude that the portrait "occupies [its] location without the support and approval" of the Defendants. *Id*. Defendants affixed the portrait to a wall in a hallway containing no other works of art of that size or type. The portrait hangs next to a case of trophies. No reasonable observer would assume this portrait did not bear the imprimatur of Defendants. Further, it is of no consequence that the portrait bears the label "Hi-Y Club." As in *Allegheny*, the label does not end the governmental endorsement. *Id*.  It "simply demonstrates that the government is endorsing the religious message of that organization." *Id*.

The Sixth Circuit reached similar conclusions in *Adland*, 307 F.3d at 480. There, the Court held that although a monument of the Ten Commandments was donated by a private

organization, a reasonable observer "would likely nevertheless infer from the plainly religious nature of the [monument] that [it] was donated with a religious theme in mind." *Id.* at 487. The source of the original speech is not relevant where the government conduct subsequent to taking possession of an item indicates endorsement because a reasonable observer will impute the intent of the donor of the item to the state entity which displays and maintains it.

Similarly, the display of the portrait contains all the indicia of government endorsement. The portrait was moved with the express approval of the board. It was installed by school employees, who affixed it to the wall, giving it an indication of permanence. The portrait is prominently displayed on the wall of the school, where "[a]n ordinary citizen could not have walked into [the school] and decorated the walls as he or she saw fit." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 968 (9th Cir. 2011). As in *Allegheny* and *Adland*, the Jackson City High School portrait is labeled with a small sign indicating it was privately donated. Despite the Defendants' attempt to circumvent the religious nature of the portrait, the placement of the display on the school walls and the actions of the board to find a way to continue displaying it in a new location make it clear that the school is, at the very least, endorsing the message of the private donors.

### c. Portrait Display Fosters Excessive Government Entanglement with Religion

Addressing the last prong of the *Lemon* test, the challenged practice must avoid excessive entanglement of government with religion. See *Lemon*, 403 U.S. at 613 (1971). In order "to assess entanglement, we have looked to 'the character and purpose of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and religious authority.'" *Agostini v. Felton*, 521 U.S. 203, 232-33 (1997) (quoting *Lemon*, 403 U.S. at 615 (1971)).

In *Coles ex rel. Coles v. Cleveland Bd. of Educ.,* 171 F.3d 369, 385 (6th Cir. 1999), the Sixth Circuit found an "excessive entanglement" of government with religion when the Cleveland school board decided to include prayer in its public meetings and chose which member from the local religious community would give those prayers. There, the Court acknowledged that schools are different from other governmental entities for two important reasons; "One is the fact that students are young, impressionable, and compelled to attend schools, and the other is that public schools are particularly important to the maintenance of a democratic, pluralistic society." *Coles ex rel. Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369, 385 (6th Cir. 1999). (*See also, McCollum v. Bd. of Ed. of School Dist*., 333 U.S. 203 (1948)).

In the case at hand, the portrait is maintained and displayed in the same school building where "young, impressionable" students are "compelled to attend." *Id*. Moreover, Jackson School District board meetings are held in the same school building where the portrait is maintained and displayed.[36] In addition to Sam Doe 5 who is compelled to attend Jackson High School, similar to *Coles*, individuals seeking to attend the district's school board meetings to discuss vital matters concerning the community and school district would be forced to encounter the religious portrait in order to attend the meetings. Under these circumstances, the portrait fosters excessive governmental entanglement with religion.

## 2. *The Display Is Not Private Speech in A Limited Public Forum But Is Government Speech Endorsing a Particular Religion*

The mere existence of private speakers in a particular space does not transform all speech…to private speech, rather than government speech…" *FFRF V. City of Warren*, 707 F.3d 686, 697-98 (6th Cir. 2013.) *See also*, *Green v. Haskell County,* 568 F.3d 784 (10th Cir. 2009.) Defendants' claim that the portrait's new location is a limited public forum for student speech is

---

[36] Supra

disingenuous. Prior to litigation, the school enjoyed unfettered discretion to select content for school walls without any uniform policy. For 65 years, the district maintained sole control and authority of the display and maintenance of the portrait.[37]  Even now, the portrait's placement on the walls of a public school imbues the portrait's display with the school board's imprimatur.

The recent vote by the Hi-Y club to seek the portrait's removal did not come after the club's move to the new high school building nearly ten years ago. Instead, the club demanded the portrait be moved after litigation commenced and after the school board's adoption of a suspiciously timed policy change. Similar to the facts in *FFRF v. City of Warren*, the portrait is displayed in one of the "most governmental of government properties;" there a city hall, here, a school. *Id.* Further, the District, like the city "erected, maintained, took down…" the portrait. Therefore, the display of the portrait is not the speech of the Hi-Y club, but is, in fact, government speech. Finally, assuming *arguendo* that Defendants' claim of creating a limited public forum was valid, the newly created policy allows for impermissible viewpoint discrimination.

The case at hand is wholly distinguishable from cases where the Supreme Court has held that religious displays by private owners on government property constitutes private speech. One such example is the case *Capitol Square Review and Advisory Bd., v. Pinette*, 515 U.S. 753, (1995,) which Defendants' have cited to as justification for their maintenance and display of the portrait.[38]  In *Pinette*, a private actor was denied the ability to display its private speech on government owned property. *Id.* There, the Court found the state could not prohibit the private speech for several reasons: 1) the court found that the plaza next to the state capitol fit the criteria for a traditional public forum; 2) the government publicly announced and opened the forum for

---

[37] see supra note 18
[38] Plaintiffs' Exhibit A, Video 7, pg.21, (lines 14-19.)

the public to use; and 3) a reasonable observer would not fairly interpret the private display as government speech. The plaza had been used for over a century for public gatherings and festivals for a variety of causes both secular and religious. The Ohio Revised Code provided that the square was available to the public for activities with a broad purpose. *Id* at 758.

In stark contrast, a school building is not inherently a public forum. For over 65 years, Defendants remained silent as to the use of the hallway by student groups. Only after litigation commenced did the school announce its new policy. However, this policy does not open its forums to all students. The new policy permits only those approved student organizations access to these areas. Third, a reasonable observer, particularly the young and impressionable who are compelled to attend the school, would be unable to separate the private speech from the government endorsement of religion in the hallway. Finally, unlike *Pinette*, there is no tradition of access to this hallway by "a multiplicity of secular and religious groups." *Id* at 755.

### a.    The School Board Has Not Created a Limited Public Forum.

No limited public forum exists in either the middle or high school because the past practices of Defendants did not create a public forum and the current policy is merely a pretext for Defendants' religious purpose.

The Sixth Circuit has determined whether the government has created a limited public forum by looking "to the government's policy and practice with respect to the forum, as well as to the nature of the property at issue and its 'compatibility with expressive activity.'" *Kincaid v. Gibson*, 236 F.3d 342, 349 (6th Cir. 2001) (citing *Cornelius v. NAACP Legal Defense and Education Fund, Inc.,* 473 U.S. 788, 802 (1985)). In fact, "the context within which the forum is found is relevant to determining whether the government has created a limited public forum." *Kincaid v. Gibson*, 236 F.3d 342, 349 (6th Cir. 2001).

Moreover, the Sixth Circuit has characterized the argument that a public school hallway is a limited public forum as "weak."  In *Washagesic* it held that "[t]he hallway is not a limited public forum because the school maintains the right to control what is posted there and does not offer space to other religions and causes." *Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 684 (6th Cir. 1994).

It is clear that prior to Defendants' adoption of the new limited public forum policy, no such policy existed in the middle school where the portrait hung for 65 years. The creation of a public forum, especially in the context of a public school building, must be intentional. *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260 (1999). In *Hazelwood*, the court found that "public schools do not possess all of the attributes of streets, parks, and other traditional public forums that time out of mind, have been used for the purposes of assembly…" *Id*. at 267. (internal citations omitted).  Prior to the recent adoption by the school board of the newly contrived limited public forum, Defendants had no policies regarding opening the walls of its schools to student organizations. The school district maintained and displayed only the portrait of Jesus on its walls for the past 65 years.

Moreover, "'the government does not create a public forum by inaction or by permitting *limited discourse*, but only by intentionally opening a nontraditional public forum for public discourse.'" *Id*. at 267 (quoting *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.,* 473 U.S. 788, 802 (1985)) (emphasis added). The new district policy only permits limited discourse by a select group of student organizations; this is not a public forum.

> **b.** **In the Absence of a Public Forum, Privately Donated Displays on Government Property Constitute Government Speech**

In the absence of a public forum, when a governmental entity permits a private person to erect a religious display on public property, the religious speech is attributable to the government. *See generally, Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009) ("Just as government-commissioned and government-financed monuments speak for the government, so do privately financed and donated monuments that the government accepts and displays to the public on government land."); *Stone v. Graham*, 449 U.S. 39, 42 (1980) ("It does not matter that the posted copies of the Ten Commandments are financed by voluntary private contributions, for the mere posting of the copies under the auspices of the legislature provides the 'official support of the State . . . Government' that the Establishment Clause prohibits.") (internal citations omitted).; *Washegesic v. Bloomingdale Public Schools*, 33 F.3d 679 (6th Cir. 1994) (finding that donated portrait of Jesus displayed in school hallway violated the Establishment Clause); *Doe v. Harlan County School Dist.*, 96 F.Supp.2d 667 (E.D. Ky. 2000), aff'd, *ACLU of Ky. v. McCreary Co.*, 354 F.3d 438 (6th Cir. 2003) (granting motion for preliminary injunction against school Ten Commandments displays that were selected by private group but were posted in accordance with school board policy); *Joyner v. Forsyth County*, 653 F.3d 341, 350 (4th Cir. 2011) ( finding legislative prayers delivered by invited clergy are government speech).

In public forum cases where religious use of school facilities were permitted, courts have emphasized that the characteristics of the forums in question ensured that private groups' access would not be considered endorsement by the school. *Board of Educ. of Westside Community Schools v. Mergens*, 496 U.S. 226, (1990). In *Westside Community Schools*, the court found that in order for the school to avoid running afoul of violating the Establishment Clause, it must, among other things "[t]ake steps to fully disassociate itself from the Christian club's religious speech and avoid appearing to sponsor or endorse the club's goals." *Id.* In *Lamb's Chapel v.*

*Center Moriches Union Free School Dist.*, 508 U.S. 384, 395 (1993), the Court explained that "[t]he showing of th[e] film series would not have been during school hours, would not have been sponsored by the school, and would have been open to the public, not just to church members"; thus, "there would have been no realistic danger that the community would think that the District was endorsing religion or any particular creed." Similarly, in *Good News Bible Club v. Milford Cent. Sch.*, 533 U.S. 98, 113 (2001), "the Club's meetings were held after school hours, not sponsored by the school, and open to any student who obtained parental consent, not just to Club members."

In contrast, Defendants, until very recently, have made no attempt to disassociate themselves from the portrait displayed in the school hallway. In fact, Superintendent Howard and the school board spoke in vigorous opposition to the removal of the portrait, and identified it as a "donation" and "historical" part of the school building. Further, even now, after the implementation of this new policy, the portrait hangs adjacent to a trophy case on an otherwise empty white wall.

> **c.     The Newly Adopted Limited Public Forum Policy Cannot Be Applied Because it Allows Viewpoint Discrimination**

As it stands, the current policy unconstitutionally censors the viewpoints of those students who do not belong to one of the established, nearly exclusively Christian, organizations in the school. The Supreme Court has made it clear that unfettered discretion in viewpoint discrimination is highly suspicious. "Th[e] danger [of viewpoint censorship] is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official. . . . [W]e have often and uniformly held that such statutes or policies impose censorship on the public or the press, and hence are unconstitutional.") *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 763-64 (1988). *See also Southeastern Promotions, Ltd. v.*

*Conrad*, 420 U.S. 546, 553 (1975) ("[T]he danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use.").

The new policy is problematic because there exists no mechanism for new student organizations to be created and avail themselves of the limited public forum. By providing no guidelines, Defendants are free to discriminate based on the viewpoints of the yet to be formed organizations. This is, defacto, viewpoint discrimination because students with viewpoints that are not represented by a current club do not have a process to create a new organization to represent their viewpoint and request display of their inspirational figures on the wall where the portrait hangs.  It is telling that two of the three currently formed non-curriculum clubs at the school are Christian based organizations.[39]

Defendants have failed to "evince either 'by policy or by practice' any intent to open" its property to private speech in a constitutional manner.  *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 303 (2000) (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 270 (1988)). Rather, the school board offers the fallacy of a limited public forum policy as a way to obfuscate its unconstitutional decision to display a sectarian religious portrait with the manifest purpose and effect of endorsing a particular religious viewpoint.

**B.**    **Without a Temporary Restraining Order and Preliminary Injunction Plaintiffs Will Continue to Suffer Irreparable Injury and Harm Because Encountering the Portrait on a Regular Basis Is an Affront to Their Personal Religious Beliefs**

Absent an injunction, Plaintiffs will suffer irreparable injury because Defendants will continue to give the appearance of endorsing religion by displaying the portrait at in the hallway

---

[39] Only three of the named clubs are not curriculum related, chess, Hi-Y and Tri-Hi-Y, and two of those groups are Christian based organizations.  *2011-2012 Jackson High School Handbook*, p. 18 http://jcs.k12.oh.us/joomla/images/jhs/2011_2012_JHS_Handbook.pdf  (last visited March 29, 2013).

of Jackson High School.  It is well settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1078-79 (6th Cir. 1994) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)). In fact, the Sixth Circuit noted in Newsom v. Norris that "[t]he Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989); *see Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004)

### C. A Temporary Restraining Order and Preliminary Injunction Will Not Harm Third Parties Because Individuals' First Amendment Rights Will Not Be Infringed Upon With Removal of The Portrait

A temporary restraining order should issue because it will not harm third parties.  Every individual student and staff member in the Jackson City School District is free to practice and express their religious beliefs, or choose not to practice or express any religious beliefs, regardless of whether or not the portrait is displayed in the high school hallway.

Defendant's arguments that they cannot remove the portrait because it violates the first amendment rights of the Hi-Y club not only fails because it is untrue that this display is private, rather than government speech, but assuming arguendo that this was the private speech of the Hi-Y club, the school would still have to remove the portrait because the policy allowing its display is not content neutral in its application.

Further, if the members of the Hi-Y club wish to express their Christian beliefs, they have ample alternative channels of communication in which to do that, including wearing t-shirts [40] or holding club events.[41]

### D. Issuance of a Temporary Restraining Order Serves the Public Interest by Preventing Violations of Plaintiffs' Constitutional Rights

It is in the public interest to enjoin Jackson City High School's display of the portrait as it is a government sponsored endorsement of a particular religion, or of religion, over no religion. In *G & V Lounge*, 23 F.3d 1071, 1079 (6th Cir. 1994), the Sixth Circuit found that "it is always in the public interest to prevent the violation of a party's constitutional rights." See *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 383 (1979); *Planned Parenthood Association v. City of Cincinnati,* 822 F.2d 1390, 1400 (6th Cir.1987*);* BJS No. 2, Inc. v. City of Troy, Ohio, 87 F. Supp. 2d 800, 804 (S.D. Ohio 1999). Though more often cited in the context of free speech violations, here the public interest is served by preventing the continued deprivation of Plaintiffs' constitutional rights protected under the Establishment Clause of the First Amendment.

### CONCLUSION

The Court should grant Plaintiffs' Motion for a Temporary Restraining Order and temporarily enjoin Defendants' display and maintenance of the portrait of Jesus because: 1) plaintiffs have a strong likelihood of success on the merits; 2) Plaintiffs will otherwise suffer irreparable injury; 3) issuance of a preliminary injunction will not cause substantial harm to others; and 4) the public interest will be served by issuance of a preliminary injunction in this matter.

---

[40] *See, e.g., Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) (holding that students retain the constitutional right to express themselves in public schools)
[41] *2011-2012 Jackson High School Handbook*, p. 18
http://jcs.k12.oh.us/joomla/images/jhs/2011_2012_JHS_Handbook.pdf  (last visited March 29, 2013).

Respectfully submitted,


/s/ James L. Hardiman_____
James L. Hardiman (0031043)
TRIAL ATTORNEY
jhardiman@acluohio.org
Jennifer Martinez Atzberger  (0072114)
jatzberger@acluohio.org
Michael Honohan (0014082)
mhonohan@acluohio.org
American Civil Liberties Union of Ohio Foundation
4506 Chester Avenue
Cleveland, OH 44103
(216) 473-2220

Rebecca S. Markert (1063232)
rmarkert@ffrf.org
Pro Hac Vice
Freedom from Religion Foundation
P.O. Box 750
Madison, WI 53701
(608) 256-8900


## CERTIFICATE OF SERVICE

The foregoing Motion for a Temporary Restraining Order and Preliminary Injunction and

memorandum in Support was filed this 1st day of April, 2013 through the Court's Electronic Filing

System. Parties will be served, and may obtain copies electronically, through the operation of the

Electronic Filing System.


/s/ James L. Hardiman_____
James L. Hardiman
TRIAL ATTORNEY