IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SAM DOE l, et al.,                              :

         Plaintiffs,                       :     CIVIL ACTION NO. 2:13-cv-112

                           :

v.                                              :     JUDGE ALGENON L. MARBLEY

                           :

JACKSON CITY SCHOOL DISTRICT, et al.,  :

         Defendants.                       :

                           :

---

## BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

The Jackson City of Board of Education and Phil Howard, in his official capacity (henceforth "the Board")[1], oppose Plaintiffs' motion for a temporary restraining order.

### I.    Preliminary Statement

The Board's only interest in this case is to follow the law.  Private religious speech in public schools is a complex area of law, fraught with dangers for school administrators.  The Board recognizes that it must act carefully here to avoid the Scylla of an Establishment Clause violation and the Charybdis of trampling on student speech.  *See, e.g., Pounds v. Katy Indep. Sch. Dist.*, 730 F. Supp. 2d 636, 638 (S.D. Tex. 2010) ("This case again requires analysis of the

---

[1] This memorandum is not filed on behalf of the Jackson City School District because the School District is a territorial area, not a legal entity capable of being sued. *See, e.g., Day v. Middletown-Monroe City Sch. Dist.*, No. CA99-11-186, 2000 WL 979141 (Ohio Ct. App. Jul. 17, 2000); *Boske v. Massilon City Sch. Dist.*, No. 2010-CA-00120, 2011 WL 444175 (Ohio Ct. App. Feb. 7, 2011); *see also Vance v. Spencer Cnty Pub. Sch. Dist.*, 231 F.3d 253, 255 n.2 (6th Cir. 2000); *Sims v. Bracken County Sch. Dist.*, C.A. No. 10-33-DLB, 2010 WL 4103167, at *1 n.2 (E.D.Ky. Oct. 18, 2010); *McGath v. Hamilton Local Sch. Dist.*, 848 F. Supp.2d 831, 838 (S.D. Ohio 2012).  Further, the claims against Defendant Howard should also be dismissed because those claims are brought against him in his official capacity only and, as such, are redundant and duplicative of the claims made against the Board.

delicate balance that public school administrators must strike between protecting the First Amendment right to free speech and avoiding endorsing religion in violation of the Establishment Clause.").

Emergency injunctive relief is not appropriate here. First, Plaintiffs do not have a strong likelihood of prevailing on the merits. The portrait at issue in this case is private student speech in a limited public forum, which is protected by the Free Speech Clause of the First Amendment to the United States Constitution. Private student speech does not violate the First Amendment's Establishment Clause, and discriminating against it would violate the Free Speech Clause. Moreover, critical factual questions remain unresolved, making a temporary restraining order inappropriate under the prevailing standard for such extraordinary relief.

Second, Plaintiffs will not suffer irreparable harm if the Court denies a temporary restraining order. The portrait at issue in this case has been displayed by the Hi-Y Club in the school for decades. Plaintiffs have known about the portrait since at least January. They filed suit in February, and only now, months later, are they seeking emergency relief. Plaintiffs' delayed decision to seek emergency relief seriously undercuts their claim that they will suffer irreparable harm.

Third, the Hi-Y Club itself would be harmed by a temporary restraining order. Indeed, the case law that Plaintiffs cite in order to establish irreparable injury is unavailing because it could just as well be cited to demonstrate the injury to the Hi-Y Club were the Court to grant the relief Plaintiffs seek.

Finally, emergency injunctive relief prior to any discovery would not serve the public interest in a case such as this one, in which there are competing First Amendment interests.

## II.    Factual Background

On information and belief, the portrait of Jesus ("the portrait") was hung by the Jackson High School Hi-Y Club in then-Jackson High School in 1947.  (Interview with Clarence Rice, January 15, 2013.)  The frame around the portrait bears the simple inscription, "Hi-Y Club." Founded in 1925, the Jackson High School Hi-Y Club is the oldest club in the school.  (1947 "Osky Wow" school yearbook.)  Affiliated with the Young Men's Christian Association (YMCA), its purpose is "[t]o create, maintain, and extend throughout the school and community high standards of Christian character." (1947 Osky Wow; 1946 Osky Wow.)  Throughout its existence, the Hi-Y Club has been active in Jackson High School, including having a booth on the football field, holding dinners, and sponsoring a spring formal.  (1947 Osky Wow.)  As early as 1947, the yearbook noted that "[t]hese things have been traditional for many years."  (1947 Osky Wow.)   Its sister organization is the "Tri-Hi-Y Club," formerly the "Girl Reserves" or the "Teen-Y."  (1969 Osky Wow; 1946 Osky Wow; 1947 Osky Wow.)  Both the Hi-Y Club and the Tri-Hi-Club are still closely affiliated and active today at Jackson High School.

The Hi-Y Club, and its sister organization, the Tri-Hi-Y Club, appear to identify their purpose and mission closely with the portrait by regularly posing with the same (or an otherwise identical) portrait for the Jackson High School yearbook on multiple occasions.  (1969 Osky Wow; 1971 Osky Wow.)

As evidenced by various pictures in the Jackson High School yearbook, the portrait has remained in the same place since 1947.  (1970 Osky Wow; 1974 Osky Wow.)  The inscription on the frame does not identify the portrait as a gift or donation to the school.  There is no record of title to the portrait ever being transferred to Jackson High School or Jackson City School District, nor does the District presently claim ownership over the portrait.  The portrait itself suggests that it was paid for by the Hi-Y Club, and there is no indication that Jackson City

2

School District paid for the portrait.  On February 12, 2013, the Jackson High School Hi-Y Club affirmatively asserted ownership over the portrait.  (Exhibit A.)

On January 2, 2013, the Freedom From Religion Foundation (FFRF), a Madison, Wisconsin, based organization, sent a letter expressing concern about the portrait.  The FFRF requested that the Jackson City School District "commence an immediate investigation into this allegation and take the appropriate and necessary steps to bring Jackson Middle School into compliance with the Constitution."  Shortly thereafter, on January 10, 2013, the American Civil Liberties Union (ACLU) of Ohio sent a similar letter "suggest[ing] that the portrait be removed or the display altered so that it may better reflect the diversity in the community."

Counsel representing the Board responded to each organization by letter on January 11, 2013, promising to conduct an investigation by March 20.  Subsequently, on January 15, 2013, counsel for the Board estimated that the investigation would be complete by February.  On January 15, counsel for the Board offered to meet with each organization and their clients to give them an opportunity to have input in the investigation.

On February 7, 2013, without ever responding to the Board's offer to meet, Plaintiffs filed the present lawsuit.  Plaintiffs did not seek either a temporary restraining order or a preliminary injunction.  On February 12, counsel for the Board presented a report and recommendation to the Board finding that the portrait belonged to the Hi-Y Club, that by allowing the portrait to remain the Board had created a limited public forum, and recommending that the Board (1) formally disclaim any ownership or control over the Portrait; (2) formally recognize that it created a limited public forum, and (3) codify a policy to clarify for the student clubs the locations of the limited public fora.  (Exhibit B.)  The Board followed the recommendation and created a limited public forum policy, recognizing the existing limited

public forum in Jackson Middle School and creating an additional limited public forum in Jackson High School. (Exhibit C.) In doing so, the Board sought to address the FFRF's and ACLU of Ohio's concerns by taking "appropriate and necessary steps" to ensure that Jackson Middle School is in "compliance with the Constitution," as well as ensuring that the displays in the limited public forum "better reflect the diversity in the community."

On March 7, 2013, pursuant to the newly adopted policy, the Hi-Y Club requested in writing that the portrait be moved to Jackson High School. (Exhibit D.) On March 13, 2013, with members of the Hi-Y Club present, school maintenance workers climbed a ladder, removed the portrait, transported it to Jackson High School, and installed it in the newly designated limited public forum. (School maintenance workers performed this function to avoid endangering students' lives and to avoid damage to school property.)

On April 1, 2013, Plaintiffs moved for leave to file an amended complaint and, for the first time, sought a temporary restraining order and preliminary injunction.

## III. Argument[2]

### A. Emergency Injunctive Relief Is Not Appropriate.

In deciding whether to issue a preliminary injunction (or a temporary restraining order), the district considers four factors: "(1) "whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). This Court should deny the motion for emergency relief

---

[2] The Board does not concede standing, which is both nonwaivable and jurisdictional. As such, the Board is entitled to test Plaintiffs' factual basis for standing, which cannot be established through pleadings alone. *See, e.g.*, *Doe v. Tangiphoa Parish Sch. Bd.*, 494 F.3d 494, 496–99 (5th Cir. 2007) (en banc).

because (1) Plaintiffs cannot show a strong likelihood of success on the merits; (2) Plaintiffs will not suffer irreparable harm if the injunction is not issued; (3) moreover, an injunction would substantially harm the Hi-Y Club; and (4) the public interest is not served by an injunction. *See Overstreet v. Lexington-Fayette Urban Cnty Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

### 1.     Plaintiffs' Cannot Demonstrate a Strong Likelihood of Success.

Plaintiffs cannot demonstrate a strong likelihood of success. In order "to establish a strong likelihood of success on the merits, plaintiffs 'must show more than a mere probability of success.'" *Choate v. U.S. Postal Service*, No. 11–2636–STA–tmp, 2011 WL 4436147, at *3 (W.D. Tenn. Sept. 22, 2011) (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)). Instead, "they must demonstrate 'a strong or substantial *likelihood* or *probability* of success on the merits.'" *Id.* (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985) (emphasis in original)). And "when a court 'lacks sufficient information' about facts necessary to determine the likelihood of success, a plaintiff has not borne his burden with respect to this factor." *Id.* (citing *Nowell v. Hickey*, No. 11–00027, 2011 WL 381943, at *2 (E.D. Ky. Feb. 1, 2011)).

### a)     Private Speech in a Limited Public Forum Cannot Violate the Establishment Clause.

Plaintiffs cannot establish a substantial likelihood or probability of success because, as the United States Supreme Court has repeatedly made clear, the Establishment Clause does not apply to private speakers in a limited public forum. *See Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 764 (1995); *Bd. of Educ. of Westside Cmty Schs. (Dist. 66) v. Mergens*, 494 U.S. 226, 250 (1990) ("[T]here is a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect.").

5

### (1) The School Board Recognized a Longstanding and Genuine Limited Public Forum.

Under the Free Speech Clause of the First Amendment, the government cannot discriminate against private religious speech, even in the interest of avoiding the appearance of an Establishment Clause violation. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 111–12, 113 (2001); *see also Pinette*, 515 U.S. at 760 ("Our precedent establishes that private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression.") (citations omitted). While free speech rights enjoy some protection even in non-public fora, *see Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799–800 (1985), free speech rights enjoy greater protections in traditional public fora or government-created limited public fora. The government can create a limited public forum by longstanding practice. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988); *see also Kincaid v. Gibson*, 236 F.3d 342, 348–49 (6th Cir. 2001) (en banc); *id.* at 351 (examining the "actual practice to determine whether [the government] truly intended to create a limited public forum").

A limited public forum can exist for specific types of speakers, including student-run clubs at a public school. *See Hazelwood Sch. Dist.*, 484 U.S. at 267 (same); *see also Kincaid*, 236 F.3d at 348–49; *id.* at 352–53 (holding that the government can create limited public forum for certain speakers). Once a limited public forum is created, the school must respect the rights of similarly situated speakers. The school can adopt narrowly tailored, content-neutral time, place, and manner restrictions, *Kincaid*, 236 F.3d at 348, but it cannot engage in viewpoint discrimination, *Good News Club*, 533 U.S. at 112.

By allowing the Hi-Y Club to display the portrait for over sixty years in Jackson High School (and later Jackson Middle School), the Board created, by longstanding practice, a limited

6

public forum for recognized student groups to hang portraits of inspirational figures. Other than allowing the Hi-Y Club to hang the portrait in 1947, Jackson City School District never actively exercised any sort of control over the Portrait.

Citing *Hazelwood School District v. Kuhlmeier*, Plaintiffs argue that a limited public forum must be intentionally created and that there was no intention to do so here. (Pls. Br. at 23.) But this misunderstands the nature of the intention. In *Hazelwood*, the Supreme Court found that there was no limited public forum created in a school newspaper written and edited by students in a class that was "taught by a faculty member during regular class hours" and for which "[s]tudents received grades and academic credit for their performance in the course." *Hazelwood Sch. Dist.*, 484 U.S. at 268. The faculty exercised active editorial (and academic) control and supervision over the students' writing, and thus there was no limited public forum. *Id.* at 270 ("A decision to teach leadership skills in the context of a classroom activity hardly implies a decision to relinquish school control over that activity."). In *Hazelwood*, it was this clear control by the school and its faculty that demonstrated that the school did not intend to create a limited public forum.

By contrast, here the school exercised no control over the limited public forum. There was no academic or administrative oversight. The school showed an intent to create the limited public forum by allowing the Hi-Y Club to hang the portrait over the decades.

Plaintiffs make much of the fact that only the Hi-Y Club used the limited public forum. (Pls. Br. at 26.) This alone is insufficient to disprove the existence of the limited public forum. In *Kincaid*, the Sixth Circuit, sitting *en banc*, found that Kentucky State University created a limited public forum for student yearbook editors despite the fact that only one student was actively involved as an editor. *See Kincaid*, 236 F.3d at 354 (finding the creation of a limited

public forum by longstanding practice); *id.* at 345 ("Coffer served as the editor of the yearbook during the 1993-94 academic year. Although a student-photographer and at least one other student assisted her at one point, Coffer organized and put together the yearbook herself after her staff members lost interest in the project."); *see also* U.S. Department of Education, Legal Guidelines Regarding the Equal Access Act and the Recognition of Student-Led Noncurricular Groups 1 (June 14, 2011), *available at* http://www.edweek.org/media/gay-straight-guidelines-blog.pdf ("If a federally funded public secondary school allows at least one noncurriculum related student group to meet on school premises during noninstructional time, it has created a "limited open forum" that triggers the Act's protections. In that case, the school may not deny the same access for similarly situated clubs on the basis of the content of the clubs' speech.").

In order to establish that there was no limited public forum because the Hi-Y Club alone took advantage of it, Plaintiffs would need to show that other student groups sought to use the limited public forum and were denied the ability to do so. Plaintiffs have offered no evidence that the school district ever barred other student groups from seeking to hang their own portraits or displays. Indeed, Plaintiffs do not even allege that this happened.

Finally, Plaintiffs argue that the Sixth Circuit in *Washegesic v. Bloomingdale Public Schools* "characterized the argument that a public school hallway is a limited public forum as 'weak.' " (Pls. Br. at 23.) In fact, the Sixth Circuit in *Washegesic* held that the specific hallway in question in that case was "not a limited public forum because the school maintains the right to control what is posted there and does not offer space to other religions and causes." 33 F.3d 679, 684 (6th Cir. 1994) (emphasis added). But the present case is different because the school district never claimed the right to control what was posted, nor did it fail to offer the space to

other religions and causes. Again, Plaintiffs have never alleged, much less offered evidence, that the school district has discriminated in any way against other student groups.

The Board did create a limited public forum by longstanding practice because it allowed the Hi-Y Club to hang the portrait of its choice and has not barred other students groups from following suit. The Board's recent actions, in response to Plaintiffs objections, have reaffirmed and codified that longstanding practice.

> **(2)** **Alternatively, Even If There Previously Was No Limited Public Forum, There Is a Limited Public Forum Now.**

However one characterizes the past, there is no dispute that the Board has adopted a policy recognizing limited public fora in both Jackson Middle School and Jackson High School. It is well established that limited public fora can be created by explicit policy. *See Hazelwood Sch. Dist.*, 484 U.S. at 267 (holding that a school can create by policy a limited public forum for student clubs); *see also Kincaid*, 236 F.3d at 348–49 (same).

Plaintiffs attempt to get around this fact by arguing that the limited public forum is a "sham" (Pls. Br. at 15–16) and that the school engages in impermissible viewpoint discrimination (Pls. Br. at 25–26). Neither of these arguments is persuasive.

First, in order to succeed in showing that this limited public forum was a sham, the Plaintiffs would need to show that other groups sought to take advantage of it and were <u>denied access</u>. Plaintiffs cannot do so. The Board, by adopting the policy that it did, has bound itself. Consequently, it must live with the constitutionally mandated reality that any student group can use the limited public forum. This is the price that the First Amendment requires the school district to pay in order to maintain a limited public forum, and the Board has elected to pay that price.

9

Second, Plaintiffs assert that disfavored student groups will be denied approved status and thereby excluded from the limited public forum. (*See* Pls. Br. at 26). Plaintiffs assert that "[t]he new policy is problematic because there exists no mechanism for new student organizations to be created and avail themselves of the limited public forum." (Pls. Br. at 26.) That is flatly incorrect. Since 1991, the Board has had a policy that "no group of students, regardless of the size of the group, will be denied an opportunity to meet on the basis of the religious, political, philosophical, or other content of the activity" and that the principal "shall grant permission" for such student groups provided certain neutral criteria are met (e.g., that "the activity has been initiated by students," and that "attendance at the meeting is voluntary"). School Board, Jackson City School District Policy Manual, Equal Access for Non District-Sponsored Student Clubs and Activities, Revised Mar. 19, 1991. (Exhibit E). Under this policy, any group of students can form a club, and the school will recognize it. Presently, Defendants are unaware of any putative student group that has sought and been denied approved status. In order for Plaintiffs to prevail, they would have to show that schools in the district violated their own policy. Plaintiffs have made no specific allegation to that effect, and even if they had, resolution of that factual issue would not be appropriate on a motion for emergency relief.

Moreover, the proper remedy if the Board violated its own policy and engaged in impermissible viewpoint discrimination would be for the group alleging discrimination to sue to enforce the policy and gain access to the limited public forum, not to strip another student group of its own First Amendment free speech rights.

Plaintiffs argue that *Pinette* is not applicable (Pls. Br. at 21–22) because a "school building is not inherently a public forum." This observation, while technically true, is irrelevant because it misses the significance of the Board's having formally recognizing a limited public

10

forum. Of course, the Board did not have to consent to the Hi-Y Club hanging the portrait 65 years ago. But once it did allow the portrait to hang, it created a limited public forum. Likewise, the Board did not have to create a limited public forum in the high school. But once it did, it was bound, and remains bound, by the rules.

**(3)**      **Plaintiffs Have Not Demonstrated an Establishment Clause Violation.**

Plaintiffs cannot demonstrate a strong likelihood of success because private speech in a limited public forum cannot violate the Establishment Clause. *See Good News Club*, 533 U.S. at 111–12, 113; *see also Pinette*, 515 U.S. at 760. Thus, the *Lemon* test is inapplicable, and Plaintiffs fail to show a strong likelihood of success.

This is best illustrated by closely examining the case on which Plaintiffs principally rely: *Washegesic v. Bloomingdale Public Schools.* Plaintiffs cite *Washegesic*, in either its Sixth Circuit or district form, more frequently than any other case. (*See* Pls. Br. at 11, 13, 14, 17, 23, 24.) Indeed, Plaintiffs characterize the facts in *Washegesic* as "almost identical to the facts" in this case. (Pls. Br. at 13.) While it is true that *Washegesic* involved a Jesus portrait in a public school, what Plaintiffs fail to note is that the district court emphasized that the case did not involve student speech, nor did it involve a limited public forum. *Washegesic v. Bloomingdale Pub. Schs.*, 813 F. Supp. 559, 566 (W.D. Mich.1993) ("[T]his case does not concern student speech nor is the wall upon which the picture hangs a 'limited public forum.' ") (emphasis in original).

The present case, of course, is exactly the opposite. Student speech is centrally at issue. And under the limited public forum policy adopted by the Board, the school expressly cedes control of what is posted in the limited public fora and does offer space to other religions and causes. *See Washegesic*, 33 F.3d at 684 (6th Cir. 1994) (holding that the specific hallway in

11

question was "not a limited public forum because the school maintains the right to control what is posted there and does not offer space to other religions and causes."). Far from the facts being "almost identical," *Washegesic* illustrates precisely how different the present case is from a typical Establishment Clause violation.

Likewise, Plaintiffs' other *Lemon*-based Establishment Clause arguments fail. Plaintiffs make much of the fact that school employees moved the portrait (Pls. Br. at 12). The Hi-Y Club requested and initiated the move. (Exhibit D.) Hi-Y Club leadership was present during the move. School employees performed the actual janitorial function of moving the portrait in order to ensure student safety and to protect school property, i.e., the walls. Any future portraits that other student groups hang in the limited public forum will be hung by school employees for the same reasons. This does not create an Establishment Clause problem. *See Rusk v. Crestview Local Sch. Dist.*, 379 F.3d 418, 423 (6th Cir. 2004) (holding that distribution of religious literature by school employees does not constitute an endorsement when done as part of a general policy to distribute a variety of materials).

Plaintiffs go to great lengths to try to show that the portrait is government speech. (*See* Pls. Br. at 14; *id.* at 18–19; *see also id.* at 23–25.) For instance, Plaintiffs rely heavily on *County of Allegheny v. ACLU Greater Pittsburgh Chapter* for the proposition that the school is endorsing private speech and thereby promoting religion. (Pls. Br. at 18–19.) But *County of Allegheny* is inapplicable because the County of Allegheny affirmatively claimed the religious speech as its own. 492 U.S. 573, 601 (1989) (county argued that it could display the crèche to celebrate a national holiday). Here, the critical difference is that the Board both created a limited public forum and affirmatively <u>disavowed</u> any intention to speak through the portrait. (*See* Report & Recommendation (Exhibit B).) For the same reasons, *Adland v. Russ*, 307 F.3d 471

12

(6th Cir. 2002), *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009), *Stone v. Graham*, 449 U.S. 39 (1980), *Washegesic*, 33 F.2d 679, *Does v. Harlan Cnty Sch. Dist.*, 96 F. Supp.2d 667 (E.D. Ky. 2000), *aff'd*, *ACLU of Ky. v. McCreary*, 354 F.3d 438 (6th Cir. 2003), and *Joyner v. Forsyth Cnty*, 653 F.3d 341 (4th Cir. 2011) are all inapplicable.  None of those cases involved limited public fora, and all involved the government actively embracing the religious speech at issue.

As a general rule, the government "is entitled to say what it wishes, and to select the views that it wants to express." *See Summum*, 555 U.S.at 467–68 (2009) (internal citations omitted); *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 560 (2005) (holding that the government has broad leeway to adopt speech as its own).  The power to select necessarily includes the power to disclaim.  *See Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217, 229 (2000) (noting that the government explicitly disclaimed the speech at issue).

In this case, the Board has affirmatively disavowed ownership.  Given the broad power government has to adopt, or disclaim, speech, the Board is within its right to disclaim the portrait and the speech it represents.  Whatever uncertainty may have existed in the past, if any, there is no uncertainty now that the Board has asserted that it is not speaking through the Portrait.

Likewise, and *contra* Plaintiffs (Pls. Br. at 18–19), now that the Board has codified the limited public forum and specifically disclaimed the speech, no reasonable observer would assume that the government is endorsing the speech.  *See Bd. of Ed. of the Westside Community Schs. (Dist. 66) v. Mergens*, 496 U.S. 226, 250 (1990) ("We think that secondary school students are mature enough and are likely to understand that a school does not endorse or support student speech that it merely permits on a nondiscriminatory basis.").  The same goes for so-called excessive entanglement and impressionability.  (Pls. Br. at 20.)  High school students are mature

13

enough to realize that the school does not endorse all speech in a limited public forum. *See Mergens*, 496 U.S. at 250.

b)      **Significant Factual Questions Remain Open.**

Finally, Plaintiffs cannot demonstrate a strong likelihood of success because significant factual questions remain open, and thus the Court lacks sufficient information to determine the likelihood of success. *See Choate*, 2011 WL 4436147, at *3.

The question of "sham" is factual. Plaintiffs assert that the Board's limited public forum policy and concern for violating the rights of the Hi-Y Club is a "sham secular purpose." (Pls. Br. at 15–16.) Likewise, Plaintiffs assert that "Defendants' claim that the portrait's new location is a limited public forum for student speech is disingenuous" (Pls. Br. at 20–21) and no limited public forum was created by past practice because no other student group was allowed access (Pls. Br. at 22). These assertions turn on whether other student groups had access in the past and have access now to the limited public forum. Plaintiffs argue that there was no limited public forum because only the Hi-Y Club's picture hung in the limited public forum. (Pls. Br. at 26). As noted above, it is well established, however, that only one speaker is required to create a limited public forum. Plaintiffs' argument is only persuasive, then, if Plaintiffs can show that other student groups sought access to the limited public forum and were denied. Plaintiffs have not shown this, nor can they show it.

Likewise, Plaintiffs have not shown the other students groups lack access to the now codified limited public fora. Plaintiffs assert this to be the case, but Plaintiffs' assertion is simply wrong. (*See* Pls. Br. at 26). Since at least 1991, Jackson School District has had a policy requiring recognition of any group of students provided that certain neutral criteria are met. School Board, Jackson City School District Policy Manual, Equal Access for Non District-Sponsored Student Clubs and Activities, Revised Mar. 19, 1991. (Exhibit E.) In order for

Plaintiffs to prevail, they would have to show that schools in the district violated their own policy.

Similarly, Plaintiffs assert that the School District owned the portrait (e.g., Pls. Br. at 12), and make much of various out-of-context statements by the Superintendent. Almost all of these quotations, however, pre-date counsel's investigation, recommendation, and report. What Superintendent Howard said at the time was provisional. Since learning the facts, however, Superintendent Howard has been clear that the portrait "belongs to the club," and that it is "student speech, not government speech." *See* Lisa Cornwell, Jackson School District Moves Jesus Portrait, *The Columbus Dispatch* (March 13, 2013), *available at* http://www.dispatch.com/content/stories/local/2013/03/16/school-moves-jesus-portrait.html.[3]

"[W]hen a court 'lacks sufficient information' about facts necessary to determine the likelihood of success, a plaintiff has not borne his burden with respect to" showing a strong likelihood of success on the merits. *Choate*, 2011 WL 4436147, at *3. Accordingly, this Court should deny Plaintiffs' motion for a temporary restraining order.

### 2.    Plaintiffs Suffer No Irreparable Harm If Injunctive Relief Is Denied.

There is no irreparable harm. Despite knowing of the portrait since at least early January, and despite filing the lawsuit on February 7, Plaintiffs waited until April 1 to seek injunctive relief. The only change is that the portrait was moved, at the Hi-Y Club's request, to the high school, which actually undercuts Plaintiffs' impressionability argument. If the harm was not sufficient to warrant seeking emergency relief in January or February, then it cannot be

---

[3] Additionally, reliance on Superintendent Howard's statements are misplaced because he is not a policymaker for the school district. *See Monell v. New York City Department of Social Servs.*, 436 U.S. 658, 689 (1978) (school district only liable for unconstitutional conduct of its policymakers).

irreparable now.  *See Monroe Federal Sav. and Loan Ass'n v. NEA Galtier Parking, LLC*, No. 3:12–cv–52, 2012 WL 2847547, at *6 (S.D. Ohio July 11, 2012) (four-month delay in seeking preliminary injunction "supports a finding that First Southern is not suffering irreparable harm").

### 3.    Injunctive Relief Would Substantially Harm the Hi-Y Club.

The Hi-Y Club will suffer substantial harm if the injunction is granted.  In *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, the Congregation Lubavitch and Rabbi Sholom B. Kalmanson sought injunctive relief allowing them to erect a menorah in a limited public forum.  923 F.2d 458, 459 (6th Cir. 1991).  The district court granted the injunction.  *Id.* On a motion to stay the injunction, the Sixth Circuit observed that "[if] Lubavitch does indeed have the constitutional right to place religious symbols on Fountain Square, its right will be irretrievably lost if the stay is granted."  *Id.* at 460.  Like *Lubavitch*, the Hi-Y Club will suffer deprivation of its First Amendment rights if the injunctive relief is granted.

Plaintiffs' only argument to the contrary is predicated on the limited public forum being a sham or engaging in impermissible viewpoint discrimination.  This is a mere assertion, and an unsound one at that.  *See supra* III.A.1.a.(2).  At a minimum, it raises factual questions that cannot be resolved at this stage and on this record.

### 4.    No Public Interest Is Served by Granting Injunctive Relief.

In this case, the public interest is served in carefully navigating treacherous waters surrounding private religious speech in a public school setting.  Public school administrators must strike a "delicate balance" between "protecting the First Amendment right to free speech and avoiding endorsing religion in violation of the Establishment Clause."  *Pounds*, 730 F. Supp. 2d at 638.  The delicate balance is best struck by allowing litigation to unfold under normal circumstance, including necessary discovery, in order to determine the full facts.  Injunctive relief would harm the public interest by forcing a premature decision.

## B.    Conclusion

For the foregoing reasons, Plaintiffs' motion for a temporary restraining order should be denied.

Respectfully submitted,

  /s/ Robert K. Kelner
Robert K. Kelner
David J. Shaw
(*Pro Hac Vice* Motions filed)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
(202) 662-5094 Telephone
(202) 778-5094 Facsimile
rkelner@cov.com
dshaw@cov.com
*Trial Counsel For Defendants*
*Jackson City Board of Education and Phil Howard,*
*in his official capacity as Superintendent*


CRABBE, BROWN & JAMES

  /s/ Brian E. Hurley
By: Brian E. Hurley          (#0007827)
30 Garfield Place, Suite 740
Cincinnati, OH 45202
(513) 784-1525 Telephone
(513) 784-1250 Facsimile
bhurley@cbjlawyers.com


  /s/ Larry H. James
Larry H. James            (#0021773)
Daniel J. Hurley          (#0034499)
500 S. Front Street, Suite 1200
Columbus, OH   43215
(614) 228-5511 Telephone
(614) 229-4559 Facsimile
ljames@cbjlawyers.com
dhurley@cbjlawyers.com
*Co-Counsel for Defendants*
*Jackson City Board of Education and Phil Howard,*
*in his official capacity as Superintendent*

17

_/s/ Hiram Sasser_____
Hiram Sasser
*Pro Hac Vice*
LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX  75075
(972) 941-4444 Telephone
(972) 941-4457 Facsimile
hsasser@libertyinstitute.org
*Co-Counsel for Defendants*
*Jackson City Board of Education and Phil Howard,*
*in his official capacity as Superintendent*

## CERTIFICATE OF SERVICE

The foregoing was filed this 2nd day of April, 2013 through the Court's Electronic Filing System. Parties will be served, and may obtain copies electronically, through the operation of the Electronic Filing System.

/s/ Brian E. Hurley